| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | FOR PUBLICATION |

-----------------------------------------------------------X
In re:                                                     :
                                                           :
KOLLEL MATEH EFRAIM, LLC, a/k/a             :   Chapter 7
MATEH EPHRAIM LLC, a/k/a                    :   Case No. 04-16410 (SMB)
KOLEL MATEH EFRAIM,                         :
                                                           :
                         Debtor             :
-----------------------------------------------------------X
ROBERT GELTZER, as Chapter 7 Trustee of     :
the Estate of Kollel Mateh Efraim, LLC, a/k/a :
Mateh Ephraim LLC, a/k/a Kolel Mateh Efraim, :
                                                           :
                         Plaintiff,         :
                                                           :
       -- against --                        :   Adv. Proc. No. 07-2052
                                                           :
KOLLEL MATEH EFRAIM, LLC, a/k/a             :
MATEH EPHRAIM LLC, a/k/a KOLEL              :
MATEH EFRAIM and KOLEL MATEH                :
EFRAIM,                                     :
                                                           :
                         Defendant.         :
-----------------------------------------------------------X

**MEMORANDUM DECISION DENYING
MOTION TO STRIKE JURY DEMAND**

**A P P E A R A N C E S:**

SQUIRE, SANDERS & DEMPSEY L.L.P.
Attorneys for Plaintiff
1095 Avenue of the Americas
New York, New York 10036

    Robert A. Wolf, Esq.
        Of Counsel

NUTOVIC & ASSOCIATES
Attorney for Defendant Kolel Mateh Efraim
488 Madison Avenue
New York, New York 10022

    Isaac Nutovic, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

The plaintiff seeks a declaratory judgment that the defendant Kolel Mateh Efraim (the "Religious Corporation") is the <u>alter ego</u> of the debtor.[1]  The Religious Corporation demanded a jury trial, and the plaintiff moved to strike the demand pursuant to FED. R. CIV. P. 39(a)(2), made applicable to this adversary proceeding by FED. R. BANKR. P. 9015(a).  The motion is denied for the reasons that follow.

## BACKGROUND

**A.    The Corporations**

Unless indicated otherwise, the facts are undisputed, and the ensuing discussion is derived primarily from the stipulated facts set forth in the Joint Pre-Trial Order, dated Nov. 10, 2008 (ECF Doc. # 20).  The defendant was incorporated as a religious corporation under the laws of the State of New York in or about August 1986.  According to its certificate of incorporation, it was formed to "conduct and maintain a House of Worship in accordance with the traditions of the Hebrew faith and to conduct all communal affairs necessary for a viable community," and to "purchase and sell property, both real and personal; to mortgage and lease both real and personal property as may be necessary for the conduct and welfare of the corporation."  Rabbi Abraham Steinwurzel has been its spiritual leader at all relevant times.  He has also been an authorized

---

[1]    This adversary proceeding was originally commenced by Helen-May Holdings, LLC and Irene Griffin.  (See Complaint, dated Sept. 25, 2007)(ECF Doc. #1.)  Following the conversion of the case to chapter 7, the trustee, Robert Geltzer, was substituted as plaintiff. (Stipulation and Order, dated Dec. 6, 2007)(ECF Doc. # 7.)

signatory on the Religious Corporation's bank accounts at the Borough Park (Brooklyn, New York) branch of the Astoria Federal Savings Bank ("Astoria Federal").

The debtor, Mateh Ephraim LLC,[2] was organized as a limited liability company under the laws of the State of New York on or about July 30, 1999. At all relevant times, Jack Lefkowitz has been the sole member and the managing member of the debtor, and Rabbi Steinwurzel has been its Rabbi. Rabbi Steinwurzel has worked closely with Lefkowitz, performing many functions for the debtor, including management, payment of account payables, and fundraising.

**B.    The Transaction with Helen May Holdings**

Helen-May Holdings, LLC ("Helen-May"), one of the two original plaintiffs in this adversary proceeding, owns certain real property known as the Meadows Resort located in Fosterdale, New York (the "Property"). On or about April 29, 2004, Helen-May entered into a contract with Aron Fixler to sell him the Property. Paragraph 47 of a rider to the contract stated that the Purchaser was seeking to acquire the Property for use as a Yeshiva School with facilities for a dormitory. On May 18, 2004, Fixler assigned the contract to Kolel Mateh Efraim.

On or about June 23, 2004, two parcels of real estate adjacent to the Property (the "Adjacent Parcels") were conveyed to an entity named in the deeds as "Kollel Mateh Efraim LLC." The New York State real property transfer tax forms executed in connection with the conveyances of the Adjacent Parcels also listed "Kollel Mateh

---

[2]    As the caption suggests, the debtor has also used or is alleged to have used the names Kollel Mateh Efraim, LLC and Kolel Mateh Efraim. The latter is the same name as the Religious Corporation.

3

Efraim LLC" as the transferee, and included an Employer Identification Number ("EIN") of 11-2831693. In fact, no such entity existed, and the EIN belonged to the Religious Corporation.

When the debtor could not close as scheduled, Helen-May and the debtor entered into a letter agreement dated June 3, 2004, which allowed the debtor to occupy the Property under certain conditions (the "Occupancy Agreement").[3]

### C.    The Bankruptcy Petitions

On October 4, 2004, "Kollel Mateh Efraim, LLC" filed a chapter 11 bankruptcy petition with this Court (the "First Petition"). Lefkowitz executed the petition and the Local Bankruptcy Rule 1007-2 Affidavit. The latter stated that he was the managing member of that entity, and that the entity was a New York limited liability company. The EIN was omitted on the first page.

On November 24, 2004, "Mateh Ephraim LLC d/b/a Kollel Mateh Efraim, LLC" filed a chapter 11 petition (Case No. 04-17525) in this Court (the "Second Petition"). Lefkowitz also executed the Second Petition, which listed the same assets as the First Petition. The Second Petition used EIN 11-2831693, the Religious Corporation's EIN. By order dated November 27, 2006, the Court dismissed the Second Petition, and ordered that the caption of this bankruptcy case be amended to identify the debtor as "Kollel Mateh Efraim, LLC, a/k/a Mateh Ephraim LLC, a/k/a Kolel Mateh Efraim."

---

[3]    The assignment and the Occupancy Agreement are the subject of a separate pending adversary proceeding, 07-4545. (See Complaint, dated November 15, 2004)(ECF Doc. # 1, filed in Adv. Pro 07-4545.)

4

On or about April 5, 2006, eighteen months after the commencement of the case, Rabbi Steinwurzel opened the first debtor in possession account (the "DIP Account") in the name "Kolel Mateh Efraim D.I.P." at the same Borough Park branch of Astoria Federal where the Religious Corporation maintained its account. He used the Religious Corporation's EIN, and was the sole authorized signatory on the DIP Account. Checks drawn on the DIP Account and signed by Rabbi Steinwurzel were used to pay (1) Court-ordered adequate protection to Helen-May, (2) vendors and suppliers to the camp for teenage boys that Rabbi Steinwurzel operated at the Property during the summers of, among other years, 2006 and 2007, and (3) repairman and contractors who did work at the Property. The DIP Account was funded from (a) transfers from the Religious Corporation's bank accounts, (b) fees delivered to Rabbi Steinwurzel by parents of the teenage boys who attended the camp run by Steinwurzel at the Property, and (c) contributions in the name of the Religious Corporation.

By order dated October 25, 2007, the Court converted this case from chapter 11 to chapter 7. The United States Trustee appointed Robert Geltzer to act as the interim trustee, and he became permanent trustee by operation of law. See 11 U.S.C. § 702(d).

### D. This Adversary Proceeding

Helen-May and its sole member, Irene Griffin, filed the instant Complaint against the debtor and the Religious Corporation prior to the conversion to chapter 7. In substance, the plaintiffs contended that the debtor and the Religious Corporation are one and the same. The first claim for relief sought a declaration that the Religious Corporation was the actual debtor that filed this case. In the alternative, the second claim for relief sought a declaration that the Religious Corporation was the alter ego of the

5

debtor, and liable for all of the debtor's debts. As noted, the chapter 7 trustee was substituted for the original plaintiffs after the case was converted to chapter 7.

The Religious Corporation demanded a jury trial, and the plaintiff moved to strike the demand. The parties subsequently stipulated to dismiss the first claim, leaving only the second. As to the second claim, the plaintiff maintains that because he is seeking declaratory relief, the claim is equitable in nature and not triable by a jury.

## DISCUSSION

The Seventh Amendment to the United States Constitution guarantees the right to trial by jury "[i]n suits at common law, where the value in controversy shall exceed twenty dollars." "[T]he thrust of the Amendment was to preserve the right to jury trial as it existed in 1791." Granfinanciera S.A. v. Nordberg, 492 U.S. 33, 41 (1989)(quoting Parsons v. Bedford, 3 Pet. 433, 447(1830)). When faced with a dispute involving the right to a jury trial, a court must engage in a two-step analysis. First, the court must compare the action to the 18th century actions brought in the English courts prior to the merger of law and equity. Chauffeurs, Teamsters & Helpers v. Terry, 494 U.S. 558, 565 (1990); Granfinanciera, 492 U.S. at 42; Tull v. United States, 481 U.S. 412, 417 (1987). Second, it must examine the remedy sought to determine whether it is legal or equitable in nature. Chauffeurs, Teamsters & Helpers, 494 U.S. at 565; Granfinanciera, 492 U.S. at 42; Tull, 481 U.S. at 417-18. The court then "balance[s] the two, giving greater weight to the latter." Germain v. Connecticut Nat'l Bank, 988 F.2d 1323, 1328 (2d Cir. 1993); accord Pereira v. Farace, 413 F.3d 330, 337 (2d Cir. 2005), cert. denied, 547 U.S. 1147 (2006). The characterization of a claim as legal or equitable involves a question of federal law, "even when the claim is based on a state-created right." Rickel & Assoc,

6

Inc. v. Smith (In re Rickel & Assoc., Inc.), 320 B.R. 513, 516 (Bankr. S.D.N.Y. 2005); see Simler v. Conner, 372 U.S. 221, 222 (1963)("in diversity cases the substantive dimension of claim asserted finds its source in state law, but characterization of that state-created claim as legal or equitable for purposes of whether right to jury trial is indicated must be made by recourse to federal law.")

In Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131 (2d Cir. 1991), the Second Circuit addressed whether a claim of alter ego liability (also referred to as "piercing the corporate veil") was triable by a jury. There, the plaintiff had obtained an approximate $1.7 million judgment against a real estate development company. The plaintiff's assignees then brought a second action seeking to recover the balance of the judgment from the defendants under the theory that they were alter egos of the judgment debtor. Following a jury trial on the alter ego claim, the district court dismissed the complaint.

Although the appeal raised several other issues, the Court explored the origins of the alter ego claim, and considered the question of whether the claim was properly tried by a jury under the two prong test discussed earlier. After an extended analysis, see id. at 134-36, the Court concluded under the first prong that "the nature of the ancient action disregarding the corporate form had equitable and legal components." Id. at 136. Turning to the second prong, the Court observed that the plaintiff sought money indicating a legal action. Id. These factors confirmed the appropriateness of the jury trial. In addition, the fact-intensive nature of the inquiry bolstered the conclusion that the jury trial was appropriate:

7

> Moreover, as a practical matter separate from Seventh Amendment considerations, whether or not those factors-discussed later in our analysis-that will justify ignoring the corporate form and imposing liability on affiliated corporations or shareholders are present in a given case is the sort of determination usually made by a jury because it is so fact specific.

Id. at 137 (citation omitted).

The plaintiff contends that Passalacqua is distinguishable because he is seeking a declaratory judgment rather than money damages. The argument lacks merit.

A federal court "may declare the legal rights or other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).[4] The Declaratory Judgment Act preserves the right to trial by jury. Beacon Theatres, Inc. v. Westover, 359 U.S. 550, 504 (1959). Accordingly, "[a]ctions for declaratory judgments are neither legal nor equitable, and courts have therefore had to look to the kind of action that would have been brought had Congress not provided the declaratory judgment remedy." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 284 (1988); accord American Safety Equipment Corp. v. J. P. Maguire & Co., 391 F.2d 821, 824 (2d Cir. 1968)("A declaratory judgment action is a statutory creation, and by its nature is neither fish nor fowl, neither legal nor equitable. Where, as here, such an action has required classification, the courts have looked to the basic nature of the suit in which the issues involved would have arisen if Congress had not created the Declaratory Judgment Act.").

---

[4] Section 2201 lists several exceptions to the declaratory judgment power, but none apply to this proceeding.

8

Here, the declaratory judgment action is legal in nature and triable by a jury. If the plaintiff had not brought this declaratory judgment action, the issue of the Religious Corporation's alter ego liability would have arisen in a damages action brought by the plaintiff against the Religious Corporation, presumably to recover the balance needed to satisfy the claims asserted against the estate. The declaratory judgment action essentially bifurcates the issues of liability and damages that would be raised in that action. If the plaintiff prevails in this proceeding, the defendant will be limited to contesting the amount of the deficiency in the estate's assets, i.e., the amount of the money judgment.[5] In addition to the Seventh Amendment issues, alter ego liability, as a practical matter, "is the sort of determination usually made by a jury because it is so fact specific." Passalacqua, 933 F.2d at 137.

G-I Holdings, Inc. v. Bennet (In re G-I Holdings, Inc.), 380 F. Supp.2d 469 (D.N.J. 2005) is directly on point. There, subsidiaries sought a declaratory judgment that they were not liable for their debtor-parent's asbestos liabilities under either a successor liability or alter ego theory. The Official Committee of Asbestos Claimants counterclaimed, contending that the subsidiaries were vicariously liable. The defendants demanded a jury trial on all issues, and the subsidiaries moved to strike the jury demand.

Citing Passalacqua, the court ruled that the defendants were entitled to a jury trial on the alter ego claims. Adopting the test discussed earlier, it framed the issue as whether the defendants would be entitled to a jury trial if they had bypassed the declaratory judgment action and sued the subsidiaries directly to recover on their underlying claims.

---

[5] The defendant may also be able to contest the amount or allowability of specific claims. The claim of at least one creditor, Helen-May, has been reduced to a final judgment. In that case, if the Court pierces the corporate veil, there will be nothing left for the defendant to contest

9

Id. at 473.  The court ruled that defendants were seeking to impose liability against the subsidiaries in an effort to obtain money damages for their asbestos-related injuries. Accordingly, the claim was legal in nature and triable by a jury.  Id. at 476; accord AstenJohnson, Inc. v. Columbia Cas. Co., 562 F.3d 213, 224 (3d Cir. 2009)(insured's declaratory judgment action to determine coverage for asbestos-related liabilities was triable by a jury because if no declaratory judgment action had been commenced, the issue would have come before the court in a breach of contract action against the insurer); Magers v. Bonds (In re Bond Distributing Co.), No. 98-6044, 2000 WL 33682815, at *8 (Bankr. M.D.N.C. Nov. 15, 2000)(the majority of courts "have concluded that where [alter ego] claims seek to impose liability upon the defendant for the debts or obligations of another, the remedy sought is monetary damages and, hence, is legal in nature.") Here too, the plaintiff is seeking to establish the predicate to obtaining a money judgment against the Religious Corporation for the deficiency in assets.

The plaintiff's principal contrary authority, Mirant Corp. v. Southern Co. (In re Mirant Corp.), Adv. Proc. No. 05-4099, 2005 WL 2265446 (Bankr. N.D. Tex. Aug. 31, 2005), is distinguishable.  The defendant in that case moved to withdraw the reference, and the district court directed the bankruptcy court to render a report and recommendation.  The disposition of the motion turned, in part, on the defendant's right to a jury trial.

One of the counts in the debtor's complaint sought to impose alter ego liability. The bankruptcy court concluded that the defendant was not entitled to a jury trial on the alter ego claim because it was equitable in nature, id. at *6, and ultimately recommended that the motion be denied.  Id. at *7.  The district court rejected the recommendation and

10

withdrew the reference without discussing the bankruptcy court's conclusion that the alter ego claim was equitable in nature and not triable by a jury.  See Mirant Corp. v. Southern Co. (In re Mirant Corp.), 337 B.R. 107 (N.D. Tex. 2006).

Mirant is contrary to the Second Circuit's decision in Passalacqua, which held that the alter ego claim had both legal and equitable roots.[6]  Furthermore, the bankruptcy court must consider how the issue of alter ego liability would have arisen if the debtor had not brought the declaratory judgment action.  Accordingly, the decision is not persuasive, and the plaintiff's motion to strike the jury demand is denied.  Settle order on notice.

Dated: New York, New York
       May 28, 2009

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
Chief United States Bankruptcy Court

---

[6] Mirant did not discuss or cite Passalacqua.

11